51 P.3d 1112

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jeremy R. JOHNSON, Defendant–Appellant.**

No. 27238.

Court of Appeals of Idaho.

July 18, 2002.

Susan E. Wiebe, Caldwell, for appellant.

Hon. Alan G. Lance, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

LANSING, J.

In this appeal, Jeremy Johnson contends that a traffic stop that was admittedly lawful at its inception evolved into an unlawful detention. During the stop, a pat-down search for weapons turned up marijuana in Johnson's pocket. This discovery led to Johnson's arrest and further search, which revealed his possession of methamphetamine. Johnson's motion to suppress the drug evidence was denied. We are asked to determine whether the discovery of the marijuana and metham-

phetamine was the product of an unlawful detention and unlawful frisk.

## I.

## BACKGROUND

The traffic stop was captured on videotape, and the facts pertinent to the suppression issues are undisputed. Idaho State Police Officer Harold Wunsch stopped a vehicle for speeding. The vehicle was occupied by Johnson, who was driving, and a male passenger. While speaking to Johnson, Wunsch detected an odor of alcohol, observed that Johnson acted extremely nervous, and noticed that his pupils were dilated and his eyes bloodshot. Suspecting that Johnson might be under the influence of drugs or alcohol, Wunsch asked whether Johnson had been drinking. Johnson admitted to drinking one or two beers. Wunsch obtained Johnson's driver's license, registration, and proof of insurance and returned to the patrol car with those documents to write the citation and ascertain whether there were any outstanding warrants for Johnson's arrest. Five to six minutes later, after the warrant check came back negative, Wunsch started back toward Johnson's vehicle to issue the speeding citation. Johnson at that point exited his car and met Wunsch between the two vehicles. Wunsch issued the citation and handed back Johnson's driver's license, registration, and proof of insurance.

Wunsch then asked Johnson whether he was in possession of any prescription drugs, marijuana, methamphetamine, or other controlled substances. Johnson denied having any drugs in his possession. Wunsch next asked whether Johnson had any weapons. Johnson initially said no, but quickly corrected himself, saying that he had a dagger in his car. Wunsch then administered a horizontal gaze nystagmus test to evaluate whether Johnson was under the influence of alcohol. Johnson passed this test, but Wunsch noticed that Johnson's eyes were crossing, an indication of possible marijuana use. Wunsch consequently decided to administer another test, called a lack of convergence test,[1] to evaluate

---

1. On appeal, Johnson questions the validity of

the lack of convergence test, but he did not

whether Johnson was under the influence of marijuana. Wunsch's observations of Johnson's eyes during that test, combined with his previous observation that Johnson's eyes were bloodshot and dilated, led him to suspect that Johnson had been using marijuana.

Wunsch then asked Johnson for a second time whether he had any marijuana in his possession. After Johnson again denied possessing marijuana, Wunsch immediately requested consent to search Johnson's vehicle. Johnson responded as if he did not understand the question, and a dialogue followed during which Wunsch asked six more times before Johnson ultimately consented to a vehicle search. After obtaining this consent, and before searching the vehicle, Wunsch frisked Johnson for weapons. During the course of the frisk, Wunsch detected a bulge in Johnson's pants pocket that felt like a bag containing a crunchy substance, which Wunsch immediately suspected to be marijuana. When Wunsch asked what the substance was, Johnson admitted that it was marijuana. Wunsch then removed the bag from Johnson's pocket and arrested him for possession of marijuana. During a further search at the jail, police found a matchbox containing methamphetamine in Johnson's pants.[2]

After being charged with possession of methamphetamine, Idaho Code § 37–2732(c)(1), Johnson moved for suppression of all evidence seized after Wunsch issued the speeding citation. Johnson argued that issuance of the citation should have ended the stop because Wunsch had no reasonable suspicion for any further investigation nor any justification to frisk Johnson. The district court denied the motion, holding that Officer Wunsch's detection of the odor of alcohol and his observations of Johnson's eyes and nervous behavior justified further investigation, that Johnson's consent to a search of his vehicle was voluntary, and that the officer's frisk of Johnson was justified for officer safety reasons. Johnson subsequently entered a conditional guilty plea to possession of methamphetamine, but reserved his right to ap-

peal the district court's denial of his suppression motion.

## II.

### ANALYSIS

Johnson concedes on appeal that the initial stop of his car for speeding was valid and that Officer Wunsch's administration of the horizontal gaze nystagmus test to allay suspicion of alcohol use was justified. He argues, however, that when he passed the horizontal gaze nystagmus test, he should have been allowed to leave. Wunsch's extension of the stop thereafter, Johnson contends, constituted an illegal detention violating the Fourth Amendment.

A traffic stop of a vehicle is a seizure of its occupants and therefore is subject to the Fourth Amendment prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660, 667–68 (1979). Hence, a traffic stop and the ensuing investigation must be justified by reasonable suspicion of a traffic offense or other criminal activity. *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983); *United States v. Brignoni–Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607, 618 (1975).

Ordinarily, a traffic stop must last no longer than necessary to effectuate its purpose, *Royer*, 460 U.S. at 500, 103 S.Ct. at 1325, 75 L.Ed.2d at 238, and the investigative inquiry must be reasonably related in scope to the justification for the stop. *Brignoni–Ponce*, 422 U.S. at 881, 95 S.Ct. at 2581, 45 L.Ed.2d at 618; *State v. Myers*, 118 Idaho 608, 612, 798 P.2d 453, 457 (Ct.App.1990). However, it is also recognized that "any routine traffic stop might turn up suspicious circumstances which could justify an officer asking questions unrelated to the stop. The officer's observations, general inquiries, and events succeeding the stop may—and often do—give rise to legitimate reasons for partic-

---

object to the admission of this evidence below, and therefore we treat the evidence as properly admitted.

**2.** After Johnson's arrest, his vehicle was searched, but no contraband was found there.

ularized lines of inquiry and further investigation by an officer." *Myers,* 118 Idaho at 613, 798 P.2d at 458 (Ct.App.1990).

In the present case, Officer Wunsch's observations of Johnson's appearance and behavior during the traffic stop justified his expansion of the investigation beyond the speeding violation. These observations initially led Wunsch to suspect that Johnson was under the influence of either alcohol or drugs. Administration of the horizontal gaze nystagmus test, which tended to absolve Johnson of alcohol intoxication, also gave Wunsch an indication that Johnson was under the influence of marijuana. This justified Wunsch in pursuing the investigation by administering another test to check for marijuana use. Johnson's failure of that test, together with other factors—his dilated pupils, bloodshot eyes, body tremors, and excessive nervousness—enhanced Wunsch's suspicion that Johnson may have been using marijuana. This reasonable suspicion justified further investigation, including the request for consent to search Johnson's automobile.

The next inquiry is whether Wunsch's repetitions of his requests to search Johnson's vehicle unreasonably prolonged the stop or coerced Johnson's consent. Strictly speaking, the legality of the automobile search is not at issue because no incriminating evidence was found there. However, it is necessary to determine whether Wunsch's reiterations of the request for consent to an automobile search unreasonably prolonged the stop and transformed it into an unlawful detention before Johnson was frisked.

■ Johnson characterizes Wunsch's requests to search his vehicle as "badgering," but the district court found that Wunsch's repetitions of the request were posed "to clarify the equivocal responses by Johnson." The videotaped encounter between Wunsch and Johnson supports the district court's finding. The conversation between Johnson and Wunsch was as follows, taking forty-four seconds to complete:

Wunsch: Can I search your car for controlled substances and weapons?

Johnson: Yes sir, there is a weapon.

Wunsch: Can I search your car?

Johnson: Can I?

Wunsch: Can I search your car?

Johnson: Shall I, I mean . . .

Wunsch: Can I search your car for drugs? That's what I'm asking. Can I search your car . . . for drugs?

Johnson: No, because it isn't my car. You can't, I told, I revealed what's in there.

Wunsch: O.K.

Johnson: You could force me to allow you to search my car.

Wunsch: I'm asking you voluntarily, can I search your car?

Johnson: (Unintelligible)

Wunsch: It's a yes or no question.

Johnson: (Unintelligible)

Wunsch: Can I search your car?

Johnson: Of course.

It is apparent that Johnson exhibited either real or feigned confusion; Johnson either did not understand or pretended not to understand what was being asked of him until Wunsch's fourth request to search. When Johnson then said that he would not consent, the officer accepted that decision by saying, "O.K." However, Johnson's subsequent statement, "You could *force me* to allow you to search my car," evidenced his continued confusion and justified Officer Wunsch in trying to clarify his inquiry. The district court could properly find that Wunsch's next statement, "I'm asking you *voluntarily,* can I search your car," was posed to address Johnson's confusion, not to badger. It has been held that "[t]here is certainly no legal rule that asking more than once for permission to search renders a suspect's consent involuntary, particularly where the suspect's initial response is ambiguous . . . ." *United States v. Jones,* 254 F.3d 692, 696 (8th Cir.2001) (citation omitted). In Johnson's case, Officer Wunsch had reasonable suspicion to investigate whether Johnson had been using marijuana, and the evidence supports the district court's finding that Wunsch's reiterations of his request to search were not harassing or badgering. Accordingly, we conclude that the requests for consent to search the vehicle were reasonable and did not coerce consent

nor unjustifiably prolong the roadside detentions.

The next issue presented is whether Wunsch's frisk of Johnson was lawful. Reasonable suspicion justifying a detention does not automatically justify a frisk for weapons. *State v. Robertson,* 134 Idaho 180, 185, 997 P.2d 641, 646 (Ct.App.2000); *State v. Fleenor,* 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct.App.1999). The stop and the frisk constitute two independent actions, each requiring its own justification. *Id.* A frisk is justified if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *State v. Rawlings,* 121 Idaho 930, 936, 829 P.2d 520, 526 (1992); *State v. Babb,* 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App.2000). In evaluating the propriety of a frisk, "we look to the facts known to the officers on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances." *Fleenor,* 133 Idaho at 555, 989 P.2d at 787.

Officer Wunsch testified that he decided to frisk Johnson after receiving permission to search the vehicle in order to assure that he would not be attacked with a weapon during the search. Concern for officer safety during routine traffic stops has been recognized by the United States Supreme Court as being "both legitimate and weighty." *Pennsylvania v. Mimms,* 434 U.S. 106, 110, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 336 (1977). *See also Maryland v. Wilson,* 519 U.S. 408, 412, 117 S.Ct. 882, 885, 137 L.Ed.2d 41, 46 (1997). This is because the "possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop." *Id.* at 414, 117 S.Ct. at 886, 137 L.Ed.2d at 47. This danger "is likely to be greater when there are passengers in addition to the driver in the stopped car." *Id.See also State v. DuValt,* 131 Idaho 550, 554, 961 P.2d 641, 645 (1998).

Johnson argues that if Officer Wunsch had been truly concerned about his safety, he would have conducted a frisk immediately after Johnson admitted that he had a dagger in his vehicle. The officer's failure to do so, Johnson argues, disproves the claim of a later reasonable suspicion that Johnson could be armed. We disagree with Johnson's assessment. An officer's refraining from conducting a frisk early in an encounter does not preclude a finding that the officer had a reasonable basis to conduct a frisk at a later point.

We conclude that the frisk here was justified. It is significant that Johnson had admitted that there was a dagger in his vehicle, because this informed Officer Wunsch that Johnson was a person who carried weapons. In addition, Officer Wunsch's observations led to a reasonable suspicion that Johnson was under the influence of marijuana and was extremely nervous, factors contributing to the risk that he might engage in rash conduct to prevent the officer from discovering contraband in the vehicle. Wunsch was the only officer on the scene and was faced with searching a vehicle while the driver and a passenger stood by. These facts presented sufficient suspicion that Johnson could be armed and sufficient risk of danger to the officer to justify the officer's decision to frisk Johnson before turning his back on Johnson to search inside the vehicle.

Finally, Johnson argues that Wunsch exceeded the permissible scope of the frisk, as the purpose of the frisk was to search for weapons, not drugs. According to Johnson, when Wunsch detected no weapon-like items on Johnson, the frisk should have ceased, and Wunsch's question about the contents of the plastic bag in Johnson's pocket was an impermissible "fishing expedition."

On this issue we look to the United States Supreme Court's decision in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), a case where an officer conducting a frisk for weapons felt "a small, hard object wrapped in plastic" in the suspect's pocket. After "squeezing, sliding and otherwise manipulating the contents of the

defendant's pocket" the officer formed the opinion that it was crack cocaine. The officer then reached into the pocket and retrieved the object, which was confirmed to be crack cocaine. The United States Supreme Court held that the search violated the Fourth Amendment because "the officer's continued exploration of [the suspect]'s pocket after having concluded that it contained no weapon was unrelated to '[t]he sole justification of the search [under *Terry:* ] ... the protection of the police officer and others nearby.'" *Id.* at 378, 113 S.Ct. at 2138–39, 124 L.Ed.2d at 347 (quoting *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 910).[3]

The *Dickerson* standard was not violated in the present case, for there is no evidence that Officer Wunsch manipulated the contents of Johnson's pocket beyond that necessary for the weapons pat-down. Although Wunsch suspected that what he felt was a bag of marijuana, he did not remove the item from Johnson's pocket until after Johnson admitted it to be marijuana. This admission created probable cause to arrest Johnson for possession of marijuana, and Wunsch's seizure of the bag of marijuana was therefore a valid search incident to a lawful arrest. *See United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Robertson,* 134 Idaho at 186, 997 P.2d at 647.

The fact that Wunsch's removal of the marijuana from Johnson's pocket preceded the formal arrest does not invalidate the search. On this point, the United States Supreme Court has said: "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633,

645–46 (1980). Following the logic of *Rawlings,* this Court has stated:

> So long as the search and arrest are substantially contemporaneous, and the fruits of the search are not required to establish probable cause for the arrest, the search need not precisely follow the arrest in Idaho to be incident to that arrest. Probable cause for arrest, of course, is a predicate for either a search or arrest.

*State v. Crabb,* 107 Idaho 298, 304, 688 P.2d 1203, 1209 (Ct.App.1984). Because Wunsch possessed probable cause to arrest Johnson before Wunsch removed the marijuana from Johnson's pocket, and the arrest occurred immediately thereafter, the seizure of the marijuana was lawful.

## III.

## CONCLUSION

The State met its burden to show: that the extension of Johnson's traffic stop to investigate his possible use of marijuana was justified by reasonable suspicion which developed during the course of the stop; that the officer's requests to search Johnson's vehicle were reasonable; and that the pat-down of Johnson for weapons was justified for officer safety purposes. The district court correctly held that the detention of Johnson and the pat-down search did not violate Fourth Amendment standards. Accordingly, the order of the district court denying Johnson's suppression motion is affirmed.

Chief Judge PERRY and Judge Pro Tem HART concur.

---

**3.** The Court also noted, however, that in different circumstances, an officer's "tactile discover[y] of contraband" during the course of a *Terry* frisk may allow the officer to seize the item if, in patting down a suspect's outer clothing, the officer "feels an object whose contour or mass makes its identity *immediately apparent*" as contraband. In that circumstance, there has been no invasion of the suspect's privacy beyond that caused by the legitimate pat down for weapons, and a warrantless seizure "would be justified by the same practical considerations that inhere in the plain-view context." *Id.* at 375–76, 113 S.Ct.at 2137, 124 L.Ed.2d at 346 (emphasis added).