153 P.3d 1186

**STATE of Idaho, Plaintiff–Respondent,**

v.

**David R. WATSON, Defendant–Appellant.**

No. 31483.

Court of Appeals of Idaho.

March 2, 2007.

Molly J. Huskey, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant. Erik R. Lehtinen argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

PERRY, Chief Judge.

David R. Watson appeals from his judgment of conviction for possession of a controlled substance. Specifically, Watson challenges the district court's order denying his motion to suppress evidence. Because we conclude that Watson's motion to suppress should have been granted, we vacate Watson's judgment of conviction.

## I.

### FACTS AND PROCEDURE

On the afternoon of March 7, 2004, a neighbor of Watson called the police and reported that Watson was walking up and down the street, yelling obscenities and screaming about killing people, including police officers. One local police officer and several state police officers responded and found that Watson had returned to his apartment. The officers asked Watson to step into the hallway, handcuffed him, and questioned him regarding the report from his neighbor. The local officer later testified that he observed that Watson made strange references to being a secret agent, smelled of alcohol, fidgeted repeatedly, and generally acted irrationally while the officers questioned him. The officers warned Watson that he was creating a disturbance and left.

Later in the same afternoon, multiple neighbors called the police and reported that Watson was again causing a disturbance. Only the local police officer responded initially. The officer later testified that, upon his arrival at the scene, he observed Watson talking with two neighbors while holding a duffel bag, and the officer called Watson over to him. The officer asked Watson to turn over the duffel bag and remove his coat. The officer then noticed a bulky object protruding from one of the front pockets of Watson's loose-fitting, nylon running pants. The officer handcuffed Watson. As he was being handcuffed, Watson told the officer that he had punched holes in the walls and doors inside the apartment complex. Immediately after handcuffing Watson, the officer conducted a pat-down search for weapons. The officer felt a hard object and reached into Watson's pocket to remove the object. In doing so, the officer emptied all items from Watson's front pocket. The officer found money, a toothpaste container,[1] keys, and a small, plastic bag that contained methamphetamine.

The state charged Watson with several offenses, including possession of a controlled substance. I.C. § 37–2732(c). Watson moved to suppress the methamphetamine. The district court denied the motion. At a bench trial, Watson renewed his motion to suppress the methamphetamine at the close of the state's evidence, and the district court again denied the request. The district court found Watson guilty of possession of a controlled substance. The district court sentenced Watson to eighteen months fixed for possession of a controlled substance. Watson has fully served his sentence. Watson appeals, challenging the denial of his motion to suppress the methamphetamine.[2]

---

1. The officer testified that he could not recall whether the toothpaste container was a bottle of toothpaste, as he wrote in the police report, or a tube of toothpaste.

2. Watson was also found guilty of disturbing the peace but does not challenge this judgment of conviction on appeal.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

## III.

## ANALYSIS

On appeal, Watson argues that the officer's pat-down search violated the Idaho and United States Constitutions.[3] A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct.App.1999). In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a specific justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct.App.2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct.App.1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491,

103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. However, reasonable grounds to justify a lawful investigatory stop do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. *See also State v. Muir*, 116 Idaho 565, 567–68, 777 P.2d 1238, 1240–41 (Ct.App.1989).

Watson concedes that the officer was justified in stopping him. Watson also concedes that it was clear to the officer that he had something in his pocket but argues that there was no reasonable basis for the officer to believe that it was a weapon and that Watson was presently dangerous. Watson argues that conducting a pat-down search was therefore unconstitutional. Watson also argues that, even if the pat-down search was justified, the officer exceeded the scope of a *Terry* frisk for weapons by reaching into his pocket and removing all items from the pocket.

### A. Reasonable Suspicion to Conduct Search

Watson argues that the officer did not have a reasonable suspicion that he was both armed and dangerous prior to the pat-down. The Idaho Supreme Court recently

---

**3.** Although Watson contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Watson's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App.1999).

addressed the issue of whether an officer must possess facts indicating that a person is both armed and dangerous prior to conducting a pat-down or whether a person need only be armed in order to perform such a search. *See State v. Henage,* 143 Idaho 655, 152 P.3d 16 (2007). The Supreme Court held that neither characterization grasps the essence of *Terry. Id.* at 661, 152 P.3d at 22. The proper inquiry is to "determine whether it was objectively reasonable for [the officer] to conclude a pat down search was necessary for the protection of [the officer] or others." *Id.* at 661, 152 P.3d at 22.

Here, the officer acted reasonably in concluding a pat-down was necessary for the protection of himself. Watson argues that the pat-down was unnecessary because he cooperated with the officer, and the pat-down occurred after he was handcuffed. Earlier in the same day, however, the officer observed that Watson made strange references to being a secret agent, smelled of alcohol, fidgeted repeatedly, and generally acted irrationally while the officers questioned him. The officer returned to the scene a second time because multiple neighbors called the police and reported that Watson was again causing a disturbance. The officer observed a bulge in a front pocket in Watson's pants during the second encounter. As the officer was handcuffing Watson immediately prior to the pat-down, Watson told the officer that he had punched holes in the walls and doors inside the apartment complex. The officer had also heard the neighbors' reports that Watson had been screaming that he was going to kill people, including police officers. At the hearing on the motion to suppress, the officer testified: "Being alone, dealing with the type of guy that he was that day anyway, you know, I didn't want to take any chances."

Looking at the facts known to the officer and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances, the officer had reasonable suspicion to believe that the bulge in Watson's pocket may have been a weapon. Given Watson's irrational and violent behavior, his threats to kill people and the fact that the officer was the only officer present, he had

reason to be concerned for his safety. The officer therefore did not violate Watson's constitutional rights by conducting a pat-down search.

**B. Scope of Search**

 Watson next argues that the officer's search exceeded the scope of a pat-down search for weapons. A protective frisk is designed to allow the officer to conduct his investigation without fear of violence and must be strictly limited to that which is necessary for the discovery of weapons. *Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334, 344 (1993); *Terry,* 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. In *Terry,* the officer conducted a limited frisk of the subject's outer clothing and did not place his hands into the pockets or under the outer surface of the garments until he felt weapons. In conducting a frisk for weapons, the officer need not be absolutely certain that the individual is armed in order for an officer's removal of an object to be constitutionally sound. *Fleenor,* 133 Idaho at 557, 989 P.2d at 789.

In challenging the scope of the officer's pat-down search, Watson argues that the officer was not entitled to reach into Watson's pocket when the officer had no facts affirmatively indicating that the bulge in Watson's pocket was a weapon. This Court has stated that discovering an unidentified "bulge" in a pocket during the course of a lawful pat-down would entitle the officers to assure themselves that it was not a weapon. *See State v. Faith,* 141 Idaho 728, 730, 117 P.3d 142, 144 (Ct.App.2005). Watson argues that this statement in *Faith* was dictum and should not be followed.

*Faith,* however, properly stated the majority rule set forth by other jurisdictions that have addressed the issue of whether an officer may further invade a person's privacy when the officer is unable to reasonably determine from the initial pat-down that a bulge is not a weapon. *See United States v. Majors,* 328 F.3d 791, 795 (5th Cir.2003) (officer entitled to look into pocket of person's baggy shorts when officer could not rule out possibility that bulge, which felt bigger than a softball and was in between

hard and soft, was weapon); *United States v. Strahan*, 984 F.2d 155, 158 (6th Cir.1993) (reaching into pocket to remove contents causing bulge proper when, given the contours of the bulge and the reasonable apprehension of officers, bulge could be some type of weapon); *United States v. Oates*, 560 F.2d 45, 62 (2d Cir.1977) ("If by touch the officer remains uncertain as to whether the article producing the bulge might be a weapon, he is entitled to remove it."); *People v. Gunsaullus*, 72 Ill.App.3d 440, 28 Ill.Dec. 943, 391 N.E.2d 142, 146–47 (1979) (removal of object causing bulge permitted when the only way for the officer to ascertain whether the object was a weapon or not was for him to withdraw it from behind belt buckle); *Commonwealth v. Hawkes*, 362 Mass. 786, 291 N.E.2d 411, 413 (1973) (officer entitled to remove package from person's jacket pocket because, after touching the bulge it created, there was nothing in his perception to indicate it was not a weapon either because of size or density); *State v. Allen*, 93 Wash.2d 170, 606 P.2d 1235, 1236 (1980) ("Assuming the legality of the frisk, the discovery of an unidentified 'bulge' in the course of the pat-down would entitle the officer to assure himself that it was not a weapon."). *See also* 4 Wayne R. LaFave, *Search and Seizure* § 9.6(c) (4th ed.2004).

The rule stated in *Faith*, however, is not without limitation. Police officers may not further intrude on a person's privacy without first attempting to determine by touch whether the object causing a bulge could be a weapon. *See United States v. Campa*, 234 F.3d 733, 739 (1st Cir.2000) (reaching into pockets whenever officer felt a protrusion and emptying all items indiscriminately not permitted when he did not attempt to distinguish between bulging items that could have been weapons and other types of concealed objects). Nor may officers further intrude on a person's privacy when an objectively reasonable determination can be made by touch that the object causing the bulge is not a weapon based on its size and density. *See Ellis v. State*, 573 So.2d 724, 725 (Miss.1990) (officer exceeded limits of *Terry* frisk in removing bag causing obvious bulge in pants when he testified bag did not feel like a solid object).

We therefore hold that the permissible scope of a pat-down search for weapons is limited to the minimum intrusion necessary to reasonably assure the officer that the suspect does not have a weapon. If the officer is unable to make an objectively reasonable determination that an object causing a bulge under a person's clothing is not a weapon by feeling its size and density, the officer is entitled to further invade the person's privacy only to the extent necessary that such a determination can be made.

In the present case, the officer was unable to make an objectively reasonable determination that the bulge in Watson's pocket was not a weapon based on the initial pat-down of the outside of Watson's pants. The district court found that the officer felt "a bulk item which apparently contained some kind of a hard object which would have been a toothpaste tube or toothpaste bottle." The district court further found that this was not "a situation where the officer simply felt some kind of plastic baggy or a soft substance" before reaching into the pocket. Even though Watson was handcuffed at the time of the pat-down, the officer was reasonably concerned for his safety given Watson's irrational behavior and threatening statements. Under the circumstances, being unable to reasonably determine by touch if the hard object the size of a toothpaste tube or toothpaste bottle in Watson's pocket was not a weapon, the officer acted reasonably in reaching into Watson's pocket to remove that object.

Watson next argues that the officer unreasonably intruded on his privacy by turning his pocket inside-out, and consequently removing all objects from the pocket instead of only removing the toothpaste container. Watson argues it would have been less intrusive of his privacy for the officer to feel around inside his pocket to only remove the toothpaste container. The state argues that feeling around inside of Watson's pocket would have been more intrusive than pulling all items out at once. The test is whether the officer acted reasonably by removing the object that could be a weapon in a minimally

intrusive fashion given the facts of the specific case.

The officer's testimony at trial provided more detail than his testimony at the motion to suppress on the issue of whether he could have easily removed only the toothpaste container instead of removing all items in Watson's pocket. The officer testified at the hearing on the motion to suppress that "after feeling, then I reach in, and it's kind of a grab of the large objects, and then you pull out and basically flip the whole pocket inside out." Then, at trial, the officer testified in more detail regarding the removal of the contents of Watson's pocket:

[DEFENSE COUNSEL]: So you reach in there, and you took out what turned out to be a tube of toothpaste?

[OFFICER]: Yes. Keys and this baggy.

[DEFENSE COUNSEL]: You're saying it came out accidentally?

[OFFICER]: Well, it came out intentionally. I pulled the whole—I mean, the entire contents of the pocket essentially came out in my hand.

[DEFENSE COUNSEL]: So that was your intention to empty the pocket?

[OFFICER]: Yes.

[DEFENSE COUNSEL]: To see whatever was in there, whatever weapons may have been in there?

[OFFICER]: Correct.

[DEFENSE COUNSEL]: So there was nothing stopping you from going in and just taking out that tube of toothpaste alone?

[OFFICER]: You mean if I would have— like once my hand was in the pocket, if I would have grabbed just that object—

[DEFENSE COUNSEL]: Yes.

[OFFICER]:—removed that? Correct.

In light of the trial testimony, Watson renewed his motion to suppress at trial, arguing that the officer intentionally removed the items that were too small to be weapons when it was unnecessary to do so. The district court considered the trial testimony after Watson renewed his motion to suppress:

Well, I'll certainly note that there is a little bit of difference in what the officer characterized as the manner in which the items could have perhaps been individually removed, recognizing the toothpaste tube or cylinder, glass jar, whatever, however it may have been characterized, was obviously the item that would have led to some suspicion of a potential weapon. But, nonetheless, I think the officer's testimony today, consistent at the previous hearing, was that, in the course of conducting the search for the weapon, he did find the hard object and, in the course of removing it, everything basically came out at once, and essentially there was a bundle of items which included the keys, the plastic bag, and the toothpaste.

The district court went on again and stated its position that "all of these items simply came out at one time."

The parties dispute whether the district court made a specific finding that the officer unintentionally removed the items that could not have been weapons. We accept the trial court's findings of fact which are supported by substantial evidence. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App.1996). The power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999). We conclude, however, that the only finding that could have been supported by substantial evidence is that the officer intentionally removed all items from the pocket when it was unnecessary to do so. The officer indicated that he could have removed only the toothpaste container and left the smaller items that could not have been weapons in the pocket. He also indicated that it was his intention to empty the pocket. We therefore need not address the question of whether the district court made a specific factual finding that the officer unintentionally removed the items that could not have been weapons because such a finding would not have been supported by substantial evidence.

Because the officer intentionally removed the items that could not have been weapons when it was unnecessary to do so in order to remove the toothpaste container, he acted unreasonably and not in a minimally intrusive fashion. We hold that the officer exceeded the scope of a pat-down search for weapons when he emptied Watson's pocket. If evidence is not seized pursuant to a recognized exception to the warrant requirement, the evidence discovered as a result of the illegal search must be excluded as the fruit of the poisonous tree. *State v. Van Dorne,* 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct.App. 2004). The baggy of methamphetamine that the officer removed from Watson's pocket was therefore the fruit of an unreasonable search and should have been suppressed.

## IV.

## CONCLUSION

The officer did not violate Watson's constitutional right to be protected against unreasonable searches and seizures by conducting a pat-down search for weapons. The officer did, however, exceed the permissible scope of a pat-down search for weapons by emptying all of the contents of Watson's pocket when it was possible to remove only the toothpaste container to determine if it was a weapon. The district court erred in denying Watson's motion to suppress because the methamphetamine was the fruit of the unlawful pat-down search. Accordingly, we vacate Watson's judgment of conviction.

Judge LANSING and Judge GUTIERREZ concur.