# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 52022

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

LUKUS MIKAEL THORNTON,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: May 6, 2026

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Susie D. Jensen, District Judge.

Judgment of conviction, vacated; order denying motion to suppress, reversed and case remanded.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Neil Paterson, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Lukus Mikael Thornton appeals from his judgment of conviction for delivery of a controlled substance and unlawful possession of a firearm. Thornton argues the district court erred by denying his motion to suppress because the deputy impermissibly exceeded the scope of consent to a weapons frisk when the deputy began investigating the second object in Thornton's pocket absent reasonable suspicion that the small, cylindrical object was a weapon or contraband. We hold the district court erred in denying Thornton's motion to suppress because the deputy exceeded the scope of Thornton's consent to a frisk for weapons. The district court's order denying Thornton's motion to suppress is reversed, Thornton's judgment of conviction is vacated, and the case is remanded for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Deputy Swan stopped Thornton after observing Thornton holding his cell phone to his ear while driving and crossing over the yellow center line. Thornton provided Deputy Swan with his

1

driver's license and vehicle registration but was unable to find the proof of insurance for the vehicle he was driving. While Thornton looked for the proof of insurance on his cell phone, Deputy Swan asked Thornton if there was anything wrong with his driver's license and if Thornton had ever been in trouble before. Thornton responded that there was nothing wrong with his license but that he had been in prison for possession of a stolen vehicle and possession of methamphetamine.

Deputy Swan asked Thornton if there was "anything" or any firearms in the vehicle; Thornton responded no to both. After a few minutes of Thornton scrolling on his phone, Deputy Swan asked Thornton to get out of his vehicle and stand at the front of the deputy's patrol vehicle so the deputy could run Thornton's license information. Deputy Swan indicated Thornton could continue to look for his proof of insurance on his phone while at the patrol vehicle. Once Thornton was at the front of the patrol vehicle, Deputy Swan asked Thornton if he had any knives on him and if the deputy could perform a pat-down search. Thornton responded, "No problem." While performing the pat-down, Deputy Swan felt some items in Thornton's right pants pocket. Deputy Swan asked Thornton what was in his pocket; Thornton responded "lighter" and pulled out a lighter.

Deputy Swan asked Thornton what else was in his pocket; as Thornton returned the lighter to his pocket, he felt around and then told Deputy Swan it was "some change" and resumed scrolling on his cell phone. Deputy Swan asked, "What was the other thing? It wasn't the lighter that I felt . . . the little circle thing in there." Thornton replied, "yeah it was," and then with his hand still in his pocket said, "oh shit," turned away from the deputy, and continued scrolling on his phone. Deputy Swan asked Thornton if he could remove the object to which Thornton replied, "Please don't." Deputy Swan then asked Thornton if he had "a little something," and Thornton said yes.

At Deputy Swan's instruction, Thornton removed the object from his pocket and placed it on the hood of the patrol vehicle. The object was a clear container holding what Deputy Swan believed to be methamphetamine. Deputy Swan asked Thornton what else he had on him and Thornton reached into his shirt pocket and handed the deputy a glass marijuana pipe and a "THC electronic-smoking device." Deputy Swan told Thornton he was going to search Thornton's vehicle and asked if there was anything else inside of the vehicle; Thornton informed Deputy Swan there was more methamphetamine, firearms, and a "bubbler." Deputy Swan confirmed with Thornton that Thornton was a convicted felon.

2

Deputy Swan then called for assistance and once another deputy arrived, Deputy Swan performed a search of Thornton's vehicle. The search of the vehicle yielded approximately sixty-six grams of methamphetamine, two scales, four used hypodermic needles, multiple rounds of ammunition, two glass-devices used to smoke marijuana, two stolen firearms, and one additional firearm. Thornton was charged with trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4)(A) (Count I); unlawful possession of a firearm, I.C. § 18-3316 (Count II); petit theft by receiving, possessing, or disposing of stolen property, I.C. §§ 18-2403(4), -2407(2) (Count III); possession of a controlled substance, marijuana, I.C. § 37-2732(c)(3) (Count IV); and possession of drug paraphernalia, I.C. § 37-2734A(1) (Count V). The State also alleged Thornton was a persistent violator, I.C. § 19-2514.

Thornton filed a motion to suppress the evidence obtained from the frisk and subsequent search of his vehicle, arguing that Deputy Swan: (1) unlawfully exceeded the scope of consent while conducting the frisk; and (2) unlawfully deviated from and extended the traffic stop. Following a hearing, the district court denied the motion, finding that Deputy Swan did not exceed the scope of the frisk with his questioning or unlawfully deviate from or extend the stop. Pursuant to a plea agreement, the State amended Count I to possession of a controlled substance with the intent to deliver, I.C. § 37-2732(a)(1)(A), dismissed Counts III through V, and dismissed the persistent violator sentencing enhancement. Thornton entered a conditional guilty plea to Counts I and II, reserving his right to appeal the denial of his motion to suppress. The district court sentenced Thornton and entered the judgment of conviction. Thornton appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

3

## III.

## ANALYSIS

On appeal, Thornton does not challenge the validity of the traffic stop nor dispute his consent to the weapons frisk. Instead, Thornton argues that Deputy Swan exceeded the scope of consent to a *Terry*[1] frisk when the deputy began investigating the second object in Thornton's pocket because Deputy Swan did not immediately identify the small, cylindrical object as either a potential weapon or contraband. The State responds that Deputy Swan's questions regarding the second object did not exceed the scope of Thornton's consent to the frisk because the deputy did not manipulate the second object in violation of *Minnesota v. Dickerson*, 508 U.S. 366 (1993) and his line of questioning was permitted under *State v. Johnson*, 137 Idaho 656, 51 P.3d 1112 (Ct. App. 2002).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Warrantless searches are presumed to be unreasonable and therefore, violative of the Fourth Amendment. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id*. A warrantless search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). The existence, voluntariness, and scope of a consent to search is a question of fact to be determined from the totality of the circumstances. *State v. Mitchell*, 175 Idaho 653, 658, 569 P.3d 155, 160 (Ct. App. 2025). Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991).

### A. The Scope of the *Terry* Frisk was Exceeded

In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The permissible scope of a pat-down search for weapons is limited to the minimum intrusion necessary to reasonably assure an officer that a suspect does not have a weapon. *State v. Watson*, 143 Idaho 840, 845, 153 P.3d 1186, 1191 (Ct. App. 2007). If an officer is unable to make an objectively reasonable

---

[1]     *Terry v. Ohio*, 392 U.S. 1 (1968).

4

determination that an object causing a bulge under a suspect's clothing is not a weapon by feeling its size and density, the officer is entitled to further invade the suspect's privacy only to the extent necessary that such a determination can be made. *Id.* at 844-45, 153 P.3d at 1190-91. After an officer is satisfied that an object found on a suspect's person is not a weapon, the officer lacks authority to continue invading the suspect's right to be free from police intrusion absent probable cause to arrest the suspect. *State v. Maahs*, 171 Idaho 738, 751, 525 P.3d 1131, 1144 (2023).

However, if an officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent that it is contraband, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. *Dickerson*, 508 U.S. at 375. "If the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Id.* at 375-76.

Thornton concedes he consented to the initial frisk for weapons. However, Thornton argues the district court erred in denying his motion to suppress because Deputy Swan's investigation into the second object in Thornton's pocket exceeded the scope of his consent to the frisk. Thornton argues that because Deputy Swan did not believe Thornton was armed and presently dangerous, nor immediately identify the small, cylindrical object as a weapon or contraband, there was no reasonable suspicion to justify the continued questioning. The State responds that the district court did not err in denying the motion because Deputy Swan's actions did not violate the standard articulated by the United States Supreme Court in *Dickerson*, 508 U.S. at 366, and his line of questioning was permitted under *Johnson*, 137 Idaho at 656, 51 P.3d at 1112. The State argues that as a result, Deputy Swan did not exceed the scope of Thornton's consent to the frisk.

At the motion to suppress hearing, Deputy Swan testified he did not have any fear that the second object in Thornton's pocket was a weapon. Thornton only consented to a frisk for weapons. Thus, any continued questioning about the second object necessarily exceeded Thornton's consent to a *Terry* frisk for weapons. As such, unless another exception to the warrant requirement permitted the questioning and subsequent removal of the second object, the evidence was obtained in violation of the Fourth Amendment. If evidence is obtained in violation of the Fourth Amendment, it is subject to exclusion. *Weaver*, 127 Idaho at 290, 900 P.2d at 198. The exclusionary rule requires the suppression of "primary evidence obtained as a direct result of an

illegal search or seizure" as well as "evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (citation omitted).

## B.     The Plain Feel Doctrine is Inapplicable

Another exception to the warrant requirement is the plain feel doctrine. The plain touch or plain feel exception may be invoked when, during a *Terry* frisk for weapons, an officer feels an object whose contour or mass makes its identity immediately apparent. *In re Doe*, 145 Idaho 980, 984, 188 P.3d 922, 926 (Ct. App. 2008). If the object's identity as contraband is immediately apparent, an officer is justified in conducting a warrantless seizure of that object--i.e., removing the object from a suspect's pocket--on the basis of probable cause. *Id.*

In *Dickerson*, an officer conducting a frisk for weapons felt "a small, hard object wrapped in plastic" in the suspect's pocket. *Dickerson*, 508 U.S. at 377. After "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket" the officer formed the opinion that it was crystalized cocaine. *Id.* at 378. The officer then reached into the suspect's pocket and retrieved a small bag of cocaine. *Id.* at 369. The United States Supreme Court held that the search violated the Fourth Amendment because the officer continued to inspect the suspect's pocket even after concluding that it contained no weapon. *Id.* at 375-78.

> Although the officer was lawfully in a position to feel the lump in respondent's pocket, because *Terry* entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by *Terry* or by any other exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.

*Id.* at 379.

In *Johnson*, an officer was conducting a frisk of Johnson following a traffic stop; the officer felt "a bag containing a crunchy substance," which he "immediately suspected to be marijuana." *Johnson*, 137 Idaho at 659, 51 P.3d at 1115. When the officer asked Johnson what it was, Johnson admitted it was marijuana. *Id.* The officer then removed the bag from Johnson's pocket and arrested him for possession of marijuana. On appeal, this Court held that the officer did not violate the standard set forth in *Dickerson* because there was no evidence that the officer manipulated the contents of Johnson's pocket beyond what was necessary for the weapons frisk. *Johnson*, 137 Idaho at 662, 51 P.3d at 1118. An important fact in *Johnson* is that the officer felt

an object whose identity as contraband was "*immediately apparent*." *Id*. at 662, n.3, 51 P.3d at 1118, n.3. It was the immediate suspicion the bag contained contraband that permitted the officer to ask the additional questions and subsequently remove the bag from Johnson's pocket. *Id.* While *Johnson* does not explicitly use the term "plain feel exception," that is the basis for the holding as the Court cited to *Dickerson*'s plain feel analysis to support its reasoning. *Johnson*, 137 Idaho at 662, 51 P.3d at 1118. Thus, the holding of *Johnson* was that the officer did not exceed the scope of the *Terry* frisk by further inquiring about the object he immediately believed to be contraband. *Johnson*, 137 Idaho at 662, 51 P.3d at 1118.

Thornton does not argue that Deputy Swan impermissibly manipulated the item in his pocket. Rather, Thornton argues that Deputy Swan's repeated questioning about the second object, without any immediate reasonable suspicion that the item was contraband, was the verbal equivalent of the physical manipulation prohibited in *Dickerson*, and was thus, unreasonable. Thornton argues the purpose of Deputy Swan's questioning was to identify the object in the first place, "not to confirm what he had already identified as contraband by lawful 'tactile' perception." Thornton further argues that unlike in *Johnson*, where the officer immediately suspected the item was marijuana and then asked further questions, Deputy Swan testified that he did not suspect the item to be contraband until after he asked Thornton further questions about the second object. Thus, Thornton argues *Johnson* is not analogous and the removal of the second object transformed the frisk into an unlawful search for evidence. We agree with Thornton.

At the motion hearing, Deputy Swan testified he did not immediately suspect the second object in Thornton's pocket was contraband:

> So I became suspicious about the other item because when he, without instruction, went into retrieve the lighter to dispel, you know, that it wasn't a weapon, that deliberate action rose my suspicion, okay, so why--I started to ask myself, I said, Why is he ignoring that?
> And when he put it back there and I asked him about it, he ignored me, paused for five seconds and started looking down at his pocket and becoming more nervous. And then he made up an answer that it was some change, and it wasn't change. It was a hard object, circular in shape.
> And I started to become suspicious that he might be in possession of something illegal.

Deputy Swan's suspicion that the second object might be contraband only arose *after* the deputy asked additional questions, and Thornton began to ignore him and turn away from him, not during the frisk. Under *Dickerson* and *Johnson*, in the absence of any immediate suspicion that

7

the second object in Thornton's pocket was contraband, there was no basis for Deputy Swan to continue to investigate what the object might be, either through physical manipulation or questions. Deputy Swan's instruction to Thornton to remove the second object exceeded the scope of Thornton's consent to a *Terry* frisk because the frisk for weapons ended when Thornton removed the only suspected weapon--the lighter--from his pocket. At that point, Deputy Swan no longer had any reasonable suspicion that Thornton possessed a weapon or contraband. We agree with Thornton that Deputy Swan's questioning was to "identify an unknown but non-weapon item," and thus, exceeded the scope of the weapons frisk. The subsequent questioning of Thornton was impermissible, as was the removal of the second object from Thornton's pocket. Because the questioning about and the seizure of the second object from Thornton's pocket exceeded the scope of consent for a weapons frisk, the frisk was transformed into a warrantless search and seizure for which no exception to the Fourth Amendment applies. *See State v. Fairchild*, 164 Idaho 336, 344, 429 P.3d 877, 885 (Ct. App. 2018) (holding that the removal of a bag of methamphetamine from suspect's pocket transformed the frisk into an unlawful search for evidence).

If evidence is not seized pursuant to a recognized exception to the warrant requirement, the evidence discovered as a result of the illegal search must be excluded as the fruit of the poisonous tree. *Watson*, 143 Idaho at 847, 153 P.3d at 1193. As a result, the evidence must be suppressed. And, to the extent the search of Thornton's vehicle was based on the evidence unlawfully obtained from Thornton, the evidence obtained from the warrantless search of the vehicle must also be suppressed. Accordingly, the district court's denial of Thornton's motion to suppress is reversed, the judgment of conviction is vacated, and the case is remanded for further proceedings consistent with this opinion.

## IV.

## CONCLUSION

Deputy Swan exceeded the permissible scope of consent for the weapons frisk when he continued to investigate the second object in Thornton's pocket without any immediate reasonable suspicion that the object was a weapon or contraband. The district court erred in denying Thornton's motion to suppress. Therefore, the district court's order denying Thornton's motion to suppress is reversed, Thornton's judgment of conviction is vacated, and the case is remanded for further proceedings consistent with this opinion.

Chief Judge TRIBE and Judge Pro Tem MELANSON, **CONCUR**.