989 P.2d 784

STATE of Idaho, Plaintiff–Respondent,

v.

Wyatt Scott FLEENOR, Defendant–Appellant.

No. 24796.

Court of Appeals of Idaho.

Oct. 14, 1999.

Sallaz Law Offices, Chtd., Boise, for appellant.  Paul E. Riggins argued.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger, II, Deputy Attorney General, Boise, for respondent.  T. Paul Krueger, II, argued.

PERRY, Chief Judge.

Wyatt Scott Fleenor appeals from the district court's denial of his motion to suppress evidence.  For the reasons set forth below, we affirm.

## I.

## BACKGROUND

On December 29, 1997, probation officer Mesler, with the assistance of Boise City police officers Doney and Burch, conducted a home visit at a residence.  Mesler was visiting the last known address of a felony probationer.

Mesler and officer Doney, who was not in uniform, approached the residence.  Mesler knocked on the door and announced his name and his status as a probation officer.  Officer Burch, in uniform, remained approximately forty feet from the door.  Eventually, Fleenor's roommate, who was not the probationer, opened the door to the residence.  While speaking with the roommate, Mesler observed a pipe that he recognized as drug paraphernalia protruding from the roommate's shirt pocket.  In response to Mesler's questions, the roommate removed the pipe from his pocket.  Mesler then asked the roommate to step outside the residence, and the roommate complied.  Officer Doney seized the pipe and asked the roommate if they could step inside the residence.  The roommate responded "yes."  Both officers and Mesler followed the roommate into the residence.

Upon entering the residence, officer Doney saw a large fixed-blade knife sitting on top of some boxes located by the door.  Thereafter,

he observed Fleenor, who was also not the probationer, standing near the kitchen area toward the back of the living room. Officer Doney noticed that Fleenor had a knife sheath on his belt. Officer Doney approached Fleenor and explained that, for officer safety reasons, he was going to remove the knife from the sheath and secure it until they were finished conducting their investigation. Fleenor became very uncooperative. At one point, officer Doney was forced to restrain Fleenor when he attempted to walk away.

Eventually, officer Doney was able to conduct a weapons frisk. The first item officer Doney removed from Fleenor was the knife from the sheath on his waistband. Officer Doney also felt a hard object in Fleenor's left front pants pocket. As officer Doney described in his testimony, what he felt was a hard rectangular object, one and one-half to two inches in length. Officer Doney testified that he believed the object felt like a small pocketknife. After reaching in and removing the object, officer Doney, based on his training and experience, immediately recognized the object as drug paraphernalia. Fleenor was then arrested. Officer Doney searched Fleenor incident to the arrest and discovered narcotics.

Fleenor was charged with possession of a controlled substance, I.C. § 37–2732(c), and possession of drug paraphernalia, I.C. § 37–2734A. Fleenor moved to suppress the evidence seized. At the start of the hearing on Fleenor's motion, the state requested that the district court take judicial notice of the testimony elicited at the roommate's preliminary hearing regarding the initial consent to enter the residence. Without objection, the district court took such judicial notice, considered additional evidence presented at the motion hearing, and denied the motion. Fleenor entered an I.C.R. 11(a)(2) plea of guilty, reserving the right to appeal the denial of the suppression motion. Fleenor appeals.

1. Although Fleenor contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in

## II.

## ANALYSIS

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which were supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

### A. Initial Entry

Fleenor asserts that both the United States Constitution and the Idaho Constitution were violated by the officers' warrantless entry into the residence.[1] He contends that, because there was conflicting testimony as to whether consent to enter the residence was given, the state failed to meet its burden during the hearing on the suppression motion. Moreover, Fleenor argues that the state failed to demonstrate that, if consent was given, it was given freely and voluntarily.

■ Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct.App.1998). In such instances, the state has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct.App.1997). The state must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854, 875 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App.1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264,

this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Fleenor's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct.App.1999).

858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp,* 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct.App.1991).

Fleenor relies on the testimony of his roommate at the suppression hearing, wherein the roommate denied giving the officers permission to enter the residence. However, at the start of the hearing on Fleenor's suppression motion, and without objection, the district court took judicial notice of the roommate's preliminary hearing transcript. At that preliminary hearing, officer Doney testified that, after Fleenor's roommate had stepped outside at Mesler's request, officer Doney asked the roommate if the officers could go inside the house and speak with him. According to officer Doney, the roommate said "yes." Officer Doney was questioned regarding his actions while asking the roommate for permission to enter the residence. When asked whether he had his hand on his pistol, or whether he threatened the roommate, officer Doney answered "no."

This Court will not substitute its view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Flowers,* 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct.App.1998). The district court found that the officers were in the residence based the roommate's consent. The district court's determination is supported by substantial testimony; therefore, this Court cannot conclude that it was error. Thus, we uphold the initial entry into the residence based on the roommate's consent.

**B. Frisk**

Fleenor challenges officer Doney's weapons frisk. The reasonableness of such an investigative frisk under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is a question of law. *State v. Burgess,* 104 Idaho 559, 561, 661 P.2d 344, 346 (Ct. App.1983). While the trial court's conclusions should not be lightly disregarded, it is

this Court's responsibility to measure the facts as found by the district court against the constitutional standard of reasonableness. *Id.* A frisk for weapons would be permissible if officer Doney had a reasonable belief that Fleenor posed a danger and had immediate control of a weapon.[2] *See State v. Muir,* 116 Idaho 565, 567, 777 P.2d 1238, 1240 (Ct.App.1989). In our analysis of a frisk, we look to the facts known to the officers on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Id.* As described in *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), an officer carrying out a weapons frisk "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Id.* at 64, 88 S.Ct. at 1903, 20 L.Ed.2d at 935.

If an officer can point to specific and articulable facts which, taken together with rational inferences therefrom, reasonably warrant a frisk for weapons, then such a frisk will not violate the Fourth Amendment. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. In *Terry,* the United States Supreme Court held that a when analyzing such a frisk, a court must decide "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. As explained by the *Terry* Court, where a police officer reasonably concludes, based on his or her observations, that people with whom the officer is dealing may be armed and presently dangerous, and where nothing in the initial stages of the encounter serve to dispel the officer's reasonable fear for his or her or other's safety, the officer is entitled to conduct a carefully limited search of the outer clothing in an attempt to discover weapons which might be used to assault the officer. *Id.* at 30–31, 88 S.Ct. at 1884–1885, 20 L.Ed.2d at 911–912.

---

2. Fleenor also contends that since the search occurred in his residence, a "much higher standard of scrutiny" should be applied. However, Fleenor has not supported this proposition with any authority. Therefore, this Court will not consider this argument. *See State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

Fleenor argues that because officer Doney did not suspect him of criminal activity, an element that Fleenor asserts "is required under *Terry,*" the frisk for weapons violated the constitution. In *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), a case wherein the police had no reason to believe Ybarra was involved in criminal activity, the Supreme Court held that the narrow scope of the *Terry* exception "does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked." *Id.* at 94, 100 S.Ct. at 343, 62 L.Ed.2d at 247. The *Ybarra* Court defined such a belief or suspicion as one that a suspect is armed and presently dangerous. *Id.* at 92–93, 100 S.Ct. at 342–343, 62 L.Ed.2d at 246–247. *See also United States v. Thomas,* 863 F.2d 622, 628 (9th Cir.1988) (The standard for justifying a frisk is "whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger."). Such a reasonable belief or suspicion forms the predicate to a frisk of a person for weapons. *Ybarra,* 444 U.S. at 93, 100 S.Ct. at 343, 62 L.Ed.2d at 246. Therefore, a police officer need not possess reasonable suspicion that an individual is involved in criminal activity before the officer may conduct a *Terry* frisk for weapons. *United States v. Bonds,* 829 F.2d 1072 (11th Cir.1987). This is so because a "stop-and-frisk under *Terry* constitutes two independent actions, each requiring separate justifications." *United States v. Flippin,* 924 F.2d 163, 165 n. 2 (9th Cir.1991). Thus, each action must be analyzed separately and, the reasonableness of each must be independently determined. *Thomas,* 863 F.2d at 628. Under the facts of this case, the Court must determine only whether officer Doney's frisk of Fleenor was reasonable.

In *Bonds,* the appellant argued that because detectives had neither probable cause to arrest, nor reasonable suspicion that he was committing or about to commit a crime, the detectives could not conduct a weapons frisk. The *Bonds* court disagreed, stating that a frisk "does not always result from, nor is it necessarily a part of, any focused investigation of the individual." *Id.* at 1074. The *Bonds* Court recognized, as in the instant case, "the need for a frisk does not always arise out of an intentional encounter." *Id.* Thus, "when an officer legitimately encounters an individual, *whether he [or she] is investigating that individual or not,* the officer may reasonably believe himself [or herself] to be in danger and may wish to determine quickly whether that person is armed." *Id.* (emphasis added). Thus, a person need not be suspected of criminal activity before an officer may lawfully conduct a limited search for weapons. Therefore, the absence of articulable facts that Fleenor was involved in criminal activity is of no consequence to whether the frisk was lawful.

The district court found that, in light of the visibility of two knives and the possible threat to officer safety, the limited weapons frisk of Fleenor was reasonable. As set forth above, officer Doney was lawfully in the residence pursuant to the roommate's consent. According to the testimony that the district court credited, officer Doney, once inside the residence, observed a large knife on boxes near the door. He also observed a knife sheath on Fleenor's belt. Officer Doney identified himself to Fleenor and explained the need to take the knife and secure it while the officers were in the residence. At that point, according to the testimony, Fleenor became very uncooperative. Officer Doney testified that his observations of the weapons, coupled with Fleenor's actions, led him to possess safety concerns. Thus, we hold that officer Doney's frisk of Fleenor was justified because officer Doney possessed articulable facts that justified him in suspecting that Fleenor was armed and presently dangerous.

## C. Scope of Frisk

Fleenor next asserts that officer Doney exceeded the permissible scope of a *Terry* frisk when he reached into Fleenor's pocket. As this Court construes Fleenor's argument, because officer Doney was not certain that what he felt was a weapon, the officer could not remove the object from Fleenor's pocket. Fleenor has provided no authority in support of his proposition that a police officer must be certain that an object

is a weapon before removal of the object is constitutionally permissible.

Pursuant to the Supreme Court's decision in *Terry*, a frisk "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908. In *Terry*, the officer conducted a limited frisk of the subject's outer clothing, and did not place his hands into the pockets or under the outer surface of the garments until he had "felt weapons, and then he merely reached for and removed" them. *Id.* at 29–30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911. Pursuant to a frisk for weapons, in order for an officer's removal of an object to be constitutionally sound, the officer need not be absolutely certain that the individual is armed. 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 9.5(c) (3d ed.1996).

Moreover, this Court has previously addressed the permissible scope of a *Terry* frisk. In *State v. Fairchild*, 121 Idaho 960, 829 P.2d 550 (Ct.App.1992), an officer entered a residence to execute a search warrant. In that case, the officer felt what he suspected to be a weapon in Fairchild's pocket and reached in and removed what turned out to be not a weapon, but contraband. This Court held that because the officer did not place his hands into the defendant's pocket or under his outer clothing until the officer felt what he suspected to be a weapon, the search was reasonably confined in scope to discover weapons. *Id.* at 967, 829 P.2d at 557.

In the case at bar, officer Doney testified that, upon frisking the outside of Fleenor's clothing, he felt an object that was hard and rectangular in shape. The object was one and a half to two inches long. Officer Doney stated that the object felt like a small pocketknife. As in *Fairchild*, only *after* officer Doney felt the object and deduced that it may be a weapon did he reach into Fleenor's pocket and remove the object. Therefore, officer Doney did not exceed the permissible scope of a weapons frisk when he placed his hand inside Fleenor's pocket to remove the object that he believed to be a weapon.

## III.

## CONCLUSION

We hold that the officers' initial entry into the residence was pursuant to the consent of Fleenor's roommate. Additionally, we hold that officer Doney's frisk of Fleenor was reasonable, and that the scope of that frisk did not exceed constitutional bounds. Therefore, the district court's order denying Fleenor's motion to suppress is affirmed.

Judge LANSING concurs.

Judge SCHWARTZMAN, dissenting.

I respectfully dissent. I begin where I shall also end:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated....

U.S. Const. amend. IV and Idaho Const. art. I, § 17.

The proliferation of dangerous drugs in our society is nothing short of a scourge. For want of a better term, I shall euphemistically refer to this curse as the "crankster syndrome." The crankster syndrome has spawned an equal but opposite counteraction by law enforcement agencies to combat this proliferation of drugs and drug abuse. I refer to these police measures as "pro-active" police investigation techniques designed to ferret out drugs in our society. On the whole, courts in general, and in particular Idaho Courts, have supported pro-active law enforcement in this area, from the constitutional point of view, within various tolerances. As a result, pro-active police investigations capitalize on such constitutional tools as consent to search, stop and frisk, in plain view, touch, feel and/or smell, car search incident to an arrest, as well as the protective sweep, to locate and seize illegal drugs in the absence of a search or arrest warrant. There is *nothing* per se wrong with this! This phenomenon was *elegantly* expressed by another court and quoted by me in the recent case of *State v. Harwood*, 133 Idaho 50, 981 P.2d 1160 (Ct.App.1999), which I summarize as follows:

There is no right to escape detection. There is no right to commit a perfect crime or to an equal opportunity to that end. The Constitution is not at all offended when a guilty man stubs his toe. On the contrary it is decent to hope that he will. Nor is it dirty business to use evidence a defendant himself may unwittingly furnish in the detectional stage. It is consonant with good morals and the Constitution to exploit a criminal's ignorance or stupidity in the detectional process.

Accordingly, I concur with that portion of the opinion which upholds the late-night "consent" entry into the home/apartment and the initial frisk of Fleenor for potential weapons while the police were on the premises in search of an individual who was not there.

But here I draw the line. There are deeper countervailing constitutional resonances to this case that transcend some shabby little crankster about to get caught for having a small amount of crank encased in a tiny plastic case in his pocket. It is 11:00 p.m. on the eve before New Year's eve when a probation officer, accompanied by two police officers, make their unsolicited, unannounced and warrantless visitation. They are in the threshold of Fleenor's home *at or by sufferance* of one of the occupants. Fleenor, who has every right to be where he is and to have knives or other weapons lying around in his own premises, is now subjected to the mild indignity of a forced, but legal (constitutional) pat-down frisk in his own home late at night because the police are let in by consent.

Where I draw the constitutional line, and am *unwilling* to *suspend* my *judicial disbelief*, is the retrieval of this so-called "weapon" from Fleenor's pocket and the removal/unscrewing of the cap of the little plastic container, which at this point is clearly known NOT to be a weapon. The item, to the officer's feel, is about an inch and a half in length and could possibly be a tiny pocket knife. Some weapon!?! [3] Fleenor is surrounded by three burly officers of the law in his own home and has something in his pocket the size of a small nail clipper or cap from a ball point pen. This is clearly no concealed weapon in the statutory sense of a dirk knife, bowie knife, dagger, stiletto, etc. of the Idaho Code § 18-3302D(2) variety. If this is deemed a potential threat to law enforcement, within the above context, then they might as well have carte blanche to pick the suspect's pockets clean, not to mention every kitchen knife, baseball bat, umbrella, etc. in the entire household and sequester the same until their night visitation is completed. [4]

I am reminded of words from Justice Felix Frankfurter, dissenting in *United States v. Rabinowitz*, 339 U.S. 56, 68, 70 S.Ct. 430, 445, 94 L.Ed. 653, 661 (1950), which talk of constitutional journeys and the direction you are taking. The safeguards of liberty have often been forged in controversies involving petty criminals. And so, it makes all the difference in the world whether one approaches the Fourth Amendment, or Art. I, § 17, as a provision dealing with a formality, a requirement embossed on a piece of parchment, or whether one recognizes it as a safeguard against recurrence of abuses deeply felt by our constitutional forefathers.

The frisk doctrine was conceived as an exception to the probable cause/warrant requirement and is justified by the strict *necessity* to protect law enforcement. It is not a shorthand means to invade a person's privacy and indiscriminately rummage around for proof of other crimes.

But what is the necessity here? [5] An inch and one-half cylindrical object in a person's pocket—where that person is in his own home at 11:00 p.m. at night, who is *not* the subject of a criminal investigation, who is minding his own business, and who is confronted by three officers who are there by

---

3. *See generally* W.R. LaFave, Search and Seizure, Vol. 4, § 9.5(c), 1996; *see also State v. Barney*, 708 So.2d 1205 (La.App.1998); *State v. Abrams*, 322 S.C. 286, 471 S.E.2d 716 (App.1996); *compare Dobson v. State*, 737 So.2d 590, 1999 WL 436810 (Fla.App.1999); *State v. Sleep*, 590 N.W.2d 235 (S.D.1999).

4. Even the trial judge drew the constitutional line at the subsequent protective sweep throughout the remainder of the household.

5. I am reminded of words by William Pitt, the Younger, to Parliament (1783):
   *Necessity* is the plea for every infringement, however minor, of [constitutional] freedoms.

sufferance *without* a warrant—is not the stuff of constitutional necessity to remove and seize, much less unscrew[6] the little cap of, this innocuous object.

In the context of investigations where citizens are being frisked merely because they are in close quarters with the police, if every fear becomes reasonable because anything is possible, necessity becomes a threshold without any floor or ceiling. If such be the stuff of necessity, I fear it dilutes the historical fabric of our Fourth Amendment, and relegates everything in a person's pocket—if not his home—to the prying hand and eye.

I do not regret that another hapless crankster is brought before the bar of the criminal justice system and placed on felony probation. I do regret, however, that it comes at the expense of the Fourth Amendment, which is ever so slightly distorted and diminished in the process. It is a *small case,* but there are those who care. A little *judicious skepticism* at the trial court level – i.e. a reluctance to simply suspend one's disbelief – would provide a healthy *judicial antidote* to this type of petty constitutional infringement. Lest we forget,

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated....

U.S. Const. amend. IV and Idaho Const. art. I, § 17.

---

**6.** Consider the case of "Reimer's cup," *State v. Reimer,* 127 Idaho 214, 899 P.2d 427 (1995).

Here, Officer Doney would, of necessity, have to unscrew the cap to *confirm his suspicions.*