Judge Pro Tern SCHWARTZMAN,
specially concurring.
I concur in the opinion of this Court, although, if left to my own devices, I would reach the same result in a slightly different manner. I begin by referencing some observations I made in my dissent in State v. Fleenor, 133 Idaho 552, 557, 989 P.2d 784, 789 (Ct.App.1999):
The [curse of the] crankster syndrome has spawned an equal but opposite counteraction by law enforcement agencies to combat this proliferation of drugs and drug abuse. I refer to these police measures as “pro-active” police investigation techniques *104 designed to ferret out drugs in our society____As a result, pro-active police investigations capitalize on such constitutional tools as consent to search, stop and frisk ..., etc.
However, I also noted that the stop and frisk doctrine is not a shorthand method to invade a person’s personal liberty and privacy to rummage around for proof of other crimes. Id. at 558, 989 P.2d at 790. Such is the case here.
In United States v. Burton, 228 F.3d 524, 527 (4th Cir.2000), the Court referenced and cited to a number of established constitutional principles applicable here. Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or another public place. Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991). Police may question citizens without implicating the Fourth Amendment protections. INS v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 255 (1984). Indeed, officers remain free to seek cooperation from citizens on the street without being called upon to articulate any level of suspicion or justification for their encounters. The authority to initiate such “police-citizen encounters” is the same as, but no greater than, the authority of an ordinary citizen to approach another on the street and ask questions. By the same token the citizen encountered in this manner has the “right to ignore his interrogator and walk away.” Terry v. Ohio, 392 U.S. 1, 33, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889, 912 (1968) (Harlan, J., concurring). So long as a person remains at liberty to disregard a police officer’s request for information, no constitutional interest is implicated. Only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a “seizure” has occurred. Terry, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16. Thus, police officers may not place their hands on citizens in search of anything without constitutionally adequate, reasonable grounds for doing so. Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917, 935 (1968).
This case tiptoes over the outer limits of Fourth Amendment jurisprudence, where the right of personal privacy to be left alone ostensibly runs up against concerns for police safety on the street. There is no clear, bright dividing line between a permissible pat down and one that is constitutionally infirm. As one court put it, if mapped out, the cases would look like the west coast of Norway (i.e., Idaho’s Sawtooth Mountain Range). See Johnson v. State, 785 So.2d 1224, 1226 (Fla.Dist.Ct.App.2001). The analytical difficulty often arises because it can be hard to distinguish a “voluntary” citizen encounter from an investigatory stop. More precisely, this case stubs its toe on the constitutional rubric that during a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them and walk away because he is “theoretically” free to leave. Id.
The officer’s conduct here went well beyond a mere consensual encounter and amounted to an investigatory seizure for which there was an inadequate legal basis.[1] The first words out of the officer’s mouth, after the salutation, “How are you doing, Boise Police. What’s going on tonight?” are, “Can you get your hands out of your pockets?” to “Get your hands out of your pockets!!” repeated with increasing intensity in rapid succession three more times, whereupon Davenport is advised that he is going to be frisked and told to put his hands on top of his head.[2] Between the first hail and hands out of pocket request, a total of just seven (7) seconds had elapsed. In all, just over one minute (one minute and eleven seconds to be precise) in time transpired between the initial hail and greet, and the laying on of hands. This is hardly the typical citizen encounter one would expect from some stranger on the street asking for directions, a pollster, salesperson, or religious pamphleteer seeking converts.
*105 The timing, intensity, and peremptory nature of the officer’s conduct, immediately demanding that Davenport remove his hands from his pockets, amounts to an illegal seizure or investigatory detention of the person, pure and simple. See Harrison v. State, 627 So.2d 583 (Fla.Dist.Ct.App.1993); Burton, 228 F.3d at 528. Davenport was simply NOT free to walk away from this police-initiated encounter — of the third kind — after the opening seven seconds of salutation.[3] He was seized in the constitutional Fourth Amendment sense and would have been forcibly stopped and possibly arrested (for obstruction or delay of police officer, no doubt, I.C. § 18-705) had he turned and walked away. Lest we forget, a seizure occurs when one’s freedom of movement has been restrained, either by physical force or a showing of authority, so that the surrounding circumstances demonstrate a reasonable person would not have felt free to leave. Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.
Accordingly, because the seizure was illegal, so was the frisk, and the evidence must be suppressed.

. The officer freely admitted he had no suspicion of any criminal activity when he greeted Davenport and no right to detain him.

. Davenport was not ever asked if he would "consent” to a search.

. Perhaps this hail, greet and remove your hands technique should be euphemistically dubbed a close encounter of the involuntary kind.