**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45957**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: November 6, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| BRANDON MICHAEL ALEXANDER, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Brandon Michael Alexander appeals from the district court's denial of his motion to suppress. Alexander argues the district court erred in determining the search of his person was justified because that determination is not supported by the record. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers responded to a call from an employee at a restaurant who had concerns that Alexander and a female companion were using or selling drugs in the restaurant's bathroom area. A week earlier, the employee found a bag with black skull markings in the bathroom. Employees believed it was drug paraphernalia after seeing Alexander and the same woman spend extended periods of time going back and forth between the bathroom and dining area.

1

When Alexander and the woman returned and resumed similar behavior, the employee called police.

When Officer Ludwig and Sergeant Gonzalez arrived, a woman matching the description given by the employee was seated at a table. Officer Ludwig testified that he believed she noticed their presence and began manipulating her phone. He assumed she was sending a warning message to Alexander in the bathroom. Officer Ludwig tried to open the bathroom door but it was locked. After directing Sergeant Gonzalez to make contact with the woman, Officer Ludwig knocked on the bathroom door and Alexander exited. Officer Ludwig described Alexander's movements as slow and unnatural, leading him to believe that he was under the influence of a controlled substance. Additionally, Alexander's shorts appeared to be weighed down by several heavy, unknown items in his pockets. Officer Ludwig also noticed Alexander had a wrap around his wrist which Alexander described as being from an abscess. Observing Alexander's arm prompted Officer Ludwig to inquire if it was a result of drug use but Alexander said it was not. Officer Ludwig later testified that Alexander's appearance, bulging pockets, and the perceived warning text led him to believe Alexander posed a safety risk.

Officer Ludwig performed a pat-down frisk and felt items he suspected were drug paraphernalia. Alexander was placed in restraints and the items were removed from his pockets. Officer Ludwig then removed a syringe, tinfoil, and a pocket knife from the pockets. An additional search of Alexander's shirt pocket revealed a zip lock bag consistent with the one described by employees, which contained what appeared to be heroin. Other items including an electronic scale were also discovered in his backpack. Alexander was charged with trafficking in heroin and possession of drug paraphernalia. Alexander moved to suppress, arguing the search was not justified. The district court denied the motion and held that the officer had articulated multiple facts that would lead a person in his position to reasonably suspect that Alexander was armed and dangerous, justifying a *Terry*[1] frisk for weapons.

After a jury trial, Alexander was found guilty and the court imposed a sentence of a unified term of ten years with three years determinate for the trafficking conviction and a concurrent term of ninety days for the drug paraphernalia conviction. Alexander timely appeals.

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968).

## II.

## ANALYSIS

Alexander requests this Court vacate his judgment of conviction and reverse the district court's order denying his motion to suppress. He contends his frisk was unlawful because the officer did not have reasonable suspicion that Alexander was armed and dangerous. We disagree. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498 (1983); *Terry*, 392 U.S. at 30; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a

frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787.

Alexander does not challenge the initial grounds for the stop, only whether the frisk was justified. Pursuant to *Terry*, Officer Ludwig could only frisk Alexander if there were facts leading to the reasonable inference that Alexander was armed and dangerous. In *State v. Bishop*, 146 Idaho 804, 203 P.3d 1203 (2009), the Idaho Supreme Court discussed several factors that are relevant in determining if a reasonable person in the officer's position would conclude that a person was armed and dangerous:

> [W]hether there were any bulges in the suspect's clothing that resembled a weapon; whether the encounter took place late at night or in a high crime area; and whether the individual made threatening or furtive movements, indicated that he or she possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous.

*Id*. at 819, 203 P.3d at 1218. Whether any of these considerations, taken together or by themselves, are enough to justify a *Terry* frisk depends on an analysis of the totality of the circumstances. *Bishop*, 146 Idaho at 819, 203 P.3d at 1218. Additionally, even if a frisk is permitted under *Terry*, the scope of a frisk must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. *Terry*, 392 U.S. at 26.

In determining Officer Ludwig reasonably suspected Alexander was armed and dangerous, the district court found the following facts: (1) Alexander had bulging pockets that resembled a weapon; (2) Alexander appeared nervous; (3) Alexander appeared to be under the influence of drugs; and (4) Alexander was uncooperative to the extent that he denied using or possessing drugs. In addition to the findings related to the *Bishop* factors, the court found that the officers were relying on a tip that Alexander may be selling drugs from the bathroom and that the officers saw the female suspect send what they assumed was a warning text to Alexander. On appeal, Alexander argues that the findings used by the court to support the first factor are not supported by the record, and that no other facts support a reasonable suspicion that he was armed and dangerous. We disagree.

The district court's finding that the bulges in Alexander's shorts "resembled a weapon" is supported by the record. Though no testimony specifically describes the exact resemblance of a

4

weapon such as a gun, it does reveal the weight of the unknown objects was causing the officer concern including the possibility Alexander had a firearm in his pocket. The unusually heavy object or objects weighing down Alexander's shorts support the belief in the presence of something that was or could be used as a weapon.

In addition to the heavy bulges, the testimony demonstrates that Officer Ludwig also reasonably inferred there might be weapons present based on his experience with individuals that are under the influence of drugs:

> Obviously people that are under the influence of controlled substances can act in irrational or dangerous manners. An individual that is under the influence and has access to a knife or a syringe or anything else can become concerned about the level of punishment that they're potentially looking at, become frightened by the presence of law enforcement and can lash out.
> *Based on the contents of the individual's pockets, that was obviously something that I was concerned about.*

(Emphasis added.) Notably, these inferences include concern related to syringes, which was a concern for Officer Ludwig, based on the markings on Alexander's arm: "I believed that there was intravenous drug use [that was going to be] in play during this situation and I was concerned about the presence of syringes." Officer Ludwig reasonably felt Alexander was armed and dangerous during their encounter because his apparent drug use and wounded arm would lead any officer to infer a syringe and needle was likely present and could easily be utilized as a weapon. Contrary to Alexander's assertion, it is not simply a blanket assumption of what *can* happen when an individual is suspected of being under the influence of drugs; it is directly related to Alexander's appearance and behavior. This inference is permissible under the Fourth Amendment and justified Officer Ludwig's individualized suspicion Alexander was armed and presently dangerous.

Alexander also argues the court's finding that he was uncooperative is a misapplication of *Bishop*. On this point, we agree. The court's determination that Alexander was "uncooperative to the extent that he denied using or possessing drugs" does nothing to aid in determining if an individual is armed and presently dangerous. At no time did Alexander demonstrate an unwillingness to cooperate or comply with the directives of Officer Ludwig. Though Officer Ludwig may have had a reasonable suspicion that Alexander was under the influence of drugs based on his behavior, Alexander's denial of drug use cannot be deemed as uncooperative in terms of satisfying this *Bishop* factor. To require an individual to admit to the

accusations of law enforcement or else be deemed dangerous for purposes of a frisk is unrelated to the proper inquiry of whether he posed a safety risk. We cannot say failing to cooperate is the same as an officer's assumption that an individual may be lying and therefore does not satisfy any factor from *Bishop*.

The remaining factors found by the court are supported by the record, including Alexander's nervousness and his appearing to be under the influence. Alexander was sweating profusely during his encounter with Officer Ludwig and was described as appearing nervous: "And in your observations of the defendant, you said he appeared nervous? Yes. Just based on the glossed-over look and the fact that he was sweating profusely . . . ." Even without the uncooperative factor, the factors present are more than enough to support the officer's suspicion that Alexander was armed and presently dangerous.

Further, the court's additional findings add to the reasonable inference that Alexander posed a safety risk. Officer Ludwig testified he was concerned that Alexander's female companion sent him a warning text, alerting him to police presence.

> My concern was that we had information that there were two parties in the store together. One of the parties at that time was believed to be in the bathroom, was identified as being in the bathroom by the calling party, and them notifying--the female notifying the male of officers' presence.

Given the information provided by the employee's tip, the female companion's "manipulation" of her phone could reasonably be inferred to be a warning text, alerting Alexander to the officers' presence. In *State v. Crooks*, 150 Idaho 117, 121, 244 P.3d 261, 265 (Ct. App. 2010), we held a lack of particularized suspicion does not necessarily preclude the reasonable inference that an individual may be armed and dangerous. The tip in this case only serves as additional information, making the inferences by the officer more reasonable.

### III.

### CONCLUSION

The district court did not err when it denied Alexander's motion to suppress because his frisk was supported by the reasonable suspicion that Alexander was armed and presently dangerous. Accordingly, we affirm the district court's order denying suppression and the judgment of conviction.

Judge HUSKEY and Judge LORELLO **CONCUR**.