**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49464**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 9, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| ERIC CHRISTOPHER NASKER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy A. Baskin, District Judge.

Judgment of conviction for possession of a controlled substance, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Eric Christopher Nasker appeals from his judgment of conviction for possession of a controlled substance. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Nasker was riding his bicycle in a business area at approximately 4 a.m. He was observed trying to open the door of a closed dental office. Officers arrived, detained Nasker, and began a frisk for weapons. Nasker then consented to a search of his pockets. The search disclosed an open cigarette pack containing a pipe which tested positive for methamphetamine. Nasker was charged with possession of methamphetamine and possession of drug paraphernalia. He moved to suppress the evidence obtained as a result of the search on several grounds, including those asserted in this

1

appeal. The motion was denied. Nasker then entered into a conditional plea agreement wherein he agreed to plead guilty to possession of a controlled substance (I.C. § 37-2732(c)), reserving his right to appeal the district court's denial of his motion to suppress. Nasker appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Nasker contends that the frisk was conducted in violation of the Fourth Amendment to the United States Constitution and Article 1, § 17 of the Idaho State Constitution; that his subsequent consent to the removal of items from his pockets was tainted as "fruit of the poisonous tree," *see Wong Sun v. United States*, 371 U.S. 471 (1963); and that evidence seized as a result of the search should therefore have been suppressed. The legality of the investigatory stop is not contested. Nasker argues that the totality of the circumstances known to the officers did not justify a frisk for weapons. Thus, we begin with an examination of the initial frisk.

Although Nasker contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Nasker's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In

*Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court created a stop-and-frisk exception to the Fourth Amendment warrant requirement. The stop and the frisk constitute two independent actions, each requiring a distinct and separate justification. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 556, 989 P.2d 784, 788 (Ct. App. 1999).

The stop is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498 (1983); *Terry*, 392 U.S. at 30; *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998); *Ferreira*, 133 Idaho at 479, 988 P.2d at 705. However, merely because there are reasonable grounds to justify a lawful investigatory stop, such grounds do not automatically justify a frisk for weapons. *Babb*, 133 Idaho at 892, 994 P.2d at 635. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787.

In determining the officer had reasonable suspicion that Nasker was armed and dangerous such that a frisk was warranted, the district court found the following facts. On August 8, 2020, at approximately 4 a.m., law enforcement received a call that a person riding a bicycle had been observed attempting to enter a dental office. A police officer responded to the call and observed a person, later identified as Nasker, riding a bike. Nasker initially fled from the officer by going behind a nearby building. When the officer followed, Nasker left the area at a high rate of speed down a residential street where he stopped and the officer caught up with him. The area where Nasker stopped had some lighting from the residences, but there were no overhead lights. There were no other people present. The officer noticed that Nasker was wearing a large, bulky sweatshirt that extended beyond his waistband. He had a large backpack and his pockets were full and bulging with items. The officer asked whether Nasker had any weapons, to which he responded that he had some knives in his backpack. Nasker straddled his bike, and it appeared to

3

the officer that he was nervous and there was a high risk that he was going to flee or fight the officer. The officer was initially alone, but a second officer arrived and conducted the frisk and subsequent search.

Nasker does not contest the district court's factual findings, but he asserts that these facts are insufficient to lead a reasonably prudent person to believe that Nasker was armed and dangerous. As our Supreme Court has explained, several factors influence whether a reasonable person in the officer's position would conclude that a particular person was armed and dangerous. *See State v. Bishop*, 146 Idaho 804, 819, 203 P.3d 1203, 1218 (2009). These factors include whether there were any bulges in the suspect's clothing that resembled a weapon; whether the encounter took place late at night or in a high-crime area; and whether the individual made threatening or furtive movements, indicated that he possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous. *Id.* Whether any of these considerations, taken together or by themselves, are enough to justify a *Terry* frisk depends on an analysis of the totality of the circumstances. *Bishop*, 146 Idaho at 819, 203 P.3d at 1218. The list is obviously not intended to be all inclusive--it illustrates some of the factors that may be considered in the totality of the circumstances analysis. *Id.*

Here, significantly, Nasker admitted he was armed. The encounter took place at 4 a.m. in a dark area where no other people were present. Nasker had been observed trying to open the door to a closed dental office. He appeared to be nervous, he initially tried to evade the officer, his pockets were bulging, and his bulky clothing extended below his waistband. Considering the facts known to the officer at the scene as reflected in the district court's findings of fact, and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances, a reasonably prudent person would conclude that Nasker may have been armed and presently dangerous. Nothing in the initial stages of the encounter served to dispel this belief. Therefore, we hold that the frisk did not violate Nasker's constitutional rights.

The frisk only lasted a very short time before Nasker consented to a search of his pockets, which revealed the methamphetamine pipe. Nasker does not contest that his consent was voluntary and only asserts that was obtained after the frisk and was tainted as "fruit of the poisonous tree." Because we hold that the frisk was lawful, the consent was not tainted.

4

## IV.

## CONCLUSION

The officer did not violate Nasker's constitutional right to be protected against unreasonable searches and seizures by conducting a frisk for weapons. Nasker's consent to a search of his pockets was not tainted as "fruit of the poisonous tree." The district court did not err in denying Nasker's motion to suppress. Accordingly, we affirm Nasker's judgment of conviction.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.