**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51305**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: December 10, 2025 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| DASHAN ANTHONE ROSS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Barry McHugh, District Judge.

Judgment of conviction for possession of a controlled substance, vacated.

Erik R. Lehtinen, State Appellate Public Defender; Justin M. Curtis, Chief Appellate Unit, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Elizabeth H. Estess, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Dashan Anthone Ross appeals from his judgment of conviction for possession of a controlled substance. We vacate.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Law enforcement responded to a report of a possible domestic violence situation based on a 911 call from a citizen. When the 911 dispatcher asked the citizen about the reason for his call, the citizen responded: "There is a black gentleman and a white lady arguing." The caller reported that the two individuals were walking through a storage complex arguing and explained, "she was yelling at him, and he's following her, and she just shoved him." The caller also reported that "she does not want him to be near her and he won't leave her alone and she's getting violent." The

1

caller provided a description of what each individual was wearing and noted they were walking toward a fast-food restaurant. The dispatcher responded, "I think we know who they are" and advised the caller that officers had been dispatched.

The officer who entered the fast-food restaurant was familiar with Ross, addressed him by his first name, and asked him to go outside to talk. Ross responded that he would talk to the officer inside because Ross was on the phone. The officer asked Ross who he was on the phone with, and he explained that he tried to call law enforcement earlier because his partner has panic attacks and Ross was trying to make sure she was "fine." The officer told Ross that he and his partner were "called in" and asked Ross where his partner was. Ross pointed behind the officer and said, "she's right there." Ross repeated that his partner was having a panic attack and hit Ross. The officer again asked Ross to go outside, to which he responded that he did not want to be harassed. The officer directed Ross outside and instructed him to keep his hands out of his pockets. When Ross indicated he did not understand why they had to go outside instead of talking inside, the officer said: "Look dude, I don't want to throw you in handcuffs, ok. So, let's go outside." Ross reiterated that he did not want to be "harassed and attacked," noting that his partner "lied last time."

When the officer and Ross walked outside into the parking lot, there were two additional officers waiting. The officer directed Ross to the front of a patrol vehicle and told him the officer was going to "pat him down." Ross asked, "For what?" to which the officer answered, "keep your hands out of your pockets" and asked Ross to hand his phone to another officer. The officer then told Ross to hand his phone to another officer, grabbed Ross's arm, and put his hands behind his back. Ross acknowledged he had a pocketknife, which the officer pulled out of Ross's pocket while telling him, "that's why we're patting you down." When the officer reached into Ross's pocket and removed the pocketknife, a small baggie of methamphetamine fell to the ground. A subsequent search of Ross's jacket pocket uncovered a methamphetamine pipe.

The State charged Ross with possession of a controlled substance, possession of drug paraphernalia, and being a persistent violator of the law. Ross filed a motion to suppress all evidence, asserting that the officer lacked reasonable suspicion to conduct an investigatory detention and that the frisk of Ross's person was unlawful. The district court held a suppression hearing at which the officer and the dispatcher testified. The officer's bodycam footage and an

audio recording of the 911 call were admitted into evidence. The district court subsequently denied Ross's motion to suppress, concluding he was lawfully detained, frisked, and searched.

Ross pled guilty to possession of a controlled substance (I.C. § 37-2732(c)(1)), reserving his right to appeal the denial of his motion to suppress, and the remaining charges were dismissed. Ross appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Ross argues that the district court erred by denying his motion to suppress. Specifically, Ross asserts the detention and frisk violated the Fourth Amendment to the U.S. Constitution. The State responds that the district court properly concluded that the investigatory stop was supported by reasonable suspicion and the frisk was justified by the officer's reasonable suspicion that Ross was armed and dangerous. We hold that, even if reasonable suspicion justified detaining Ross,[1] the attendant frisk was not based on a reasonable suspicion that Ross was presently armed and dangerous.

An investigatory detention is justified if there is a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. *Florida v. Royer*, 460 U.S. 491, 498 (1983); *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641,

---

[1] It is unclear why Ross's partner was not also detained based on the information provided by the citizen who reported to dispatch that the couple was arguing and that the female shoved Ross, particularly since the female was also at the fast-food restaurant where Ross was detained.

644 (1998); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). However, reasonable suspicion sufficient to justify an investigatory stop does not automatically justify a frisk for weapons. *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000). An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Terry*, 392 U.S. at 27; *Babb*, 133 Idaho at 892, 994 P.2d at 635; *State v. Fleenor*, 133 Idaho 552, 555, 989 P.2d 784, 787 (Ct. App. 1999). In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787.

We need not address whether there was reasonable suspicion to detain Ross because, even if there was, neither the facts known to the officers at the scene nor the inferences of risk of danger that could be drawn from those facts support a conclusion that Ross was armed and dangerous. Factors that may influence whether a reasonable person in an officer's position would believe that a particular individual was armed and dangerous, such that a frisk would be warranted include any bulges in the individual's clothing that resembled a weapon; whether the encounter took place late at night or in a high crime area; and whether the individual made threatening or furtive movements, indicating that he or she possessed a weapon, appeared nervous or agitated, appeared to be under the influence of alcohol or illegal drugs, was unwilling to cooperate, or had a reputation for being dangerous. *State v. Bishop*, 146 Idaho 804, 819, 203 P.3d 1203, 1218 (2009).

Ross argues that the frisk did not satisfy the armed and presently dangerous criteria. We agree. The officer made contact with Ross inside a fast-food restaurant during daylight. Although initially reluctant to go outside to talk to the officer, instead indicating a willingness to talk inside, Ross eventually went outside where two additional officers were waiting. And, although Ross was wearing a winter coat, so too were the officers, undoubtedly because the encounter occurred in the middle of winter. Regardless, there was no evidence that there were any bulges in Ross's coat that suggested he was concealing a weapon. Despite an "in-house alert" for "weapon, and guns on person," there was nothing to suggest that Ross was carrying a weapon when law enforcement made contact with him and there was no report that Ross brandished a weapon at any time while

4

the citizen caller watched Ross arguing with and being shoved by his partner. We are also unpersuaded that the "furtive movement" noted by the officer was sufficient to suggest Ross was armed or dangerous. That "furtive movement" occurred when Ross, while still in the fast-food restaurant, briefly put part of his left hand in his pocket, while holding his phone to his ear in his right hand. At that point, the officer told Ross to keep his hands out of his pockets and he complied.

At the suppression hearing, the officer testified that he was concerned for officer safety and the safety of the restaurant's patrons. In particular, the officer testified that domestic violence calls are some of the most dangerous calls for officers. The district court found that the officer's concerns were objectively reasonable based on his training and experience. While concerns regarding the potential danger related to domestic violence calls are certainly justified, those concerns did not translate to a reasonable belief that Ross was armed and presently dangerous based on the 911 report or the facts on the scene when the officer made contact with Ross. Indeed, the officer admitted at the suppression hearing that he had no evidence that Ross was presently armed and dangerous prior to the frisk and acknowledged that he was not combative toward the officer. Rather, the officer's concern that Ross *could* be armed was based on prior contact with him which involved calls for trespass and an overdose. But nothing in the nature of these contacts, nor the evidence presented about them, indicated that they involved weapons or threats. In short, the record does not support the conclusion that Ross was armed and dangerous.

Based on the evidence presented in support of the frisk, the State failed to meet its burden of showing the frisk was justified based on a reasonable suspicion that Ross was armed and dangerous. Ross was therefore entitled to suppression of the evidence found as a result of the frisk.

## IV.

## CONCLUSION

Even assuming the officer was justified in detaining Ross, the State failed to meet its burden of proving the frisk was supported by reasonable suspicion that he was armed and dangerous. Therefore, the district court erred in denying Ross's motion to suppress. Accordingly, Ross's judgment of conviction for possession of a controlled substance is vacated.

Judge TRIBE and Judge Pro Tem MELANSON, **CONCUR**.